**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MIDWEST OPERATING ENGINEERS** | ) | |
| **WELFARE FUND,** *et al.*, | ) | **No. 19 CV 1153** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **DAVIS & SON EXCAVATION, LLC,** | ) | |
| | ) | **March 30, 2021** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Midwest Operating Engineers Welfare Fund, Midwest Operating Engineers Pension Trust Fund, Operating Engineers Local 150 Apprenticeship Fund, Midwest Operating Engineers Retirement Enhancement Fund, and Local 150 IUOE Vacation Savings Plan (collectively "the ERISA Funds") and Construction Industry Research and Service Trust Fund ("CRF") (altogether "the Funds"), filed this action against Defendant Davis & Son Excavation, LLC ("Davis") pursuant to Sections 1132 and 1145 of the Employment Retirement Income Security Act, 29 U.S.C. § 1001 ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Through this lawsuit, the Funds sought an audit of Davis's records to identify any unpaid contributions owed and the payment of any amounts determined to be due as well as audit fees and attorneys' fees and costs. Having successfully collected the necessary records from Davis and performed the audit, the Funds now move for partial summary judgment on their claim for fees and costs. For the following reasons, the Funds' motion is denied:

## Background[1]

### A.    Local Rule 56.1

Both parties argue that the other failed to comply with Local Rule ("LR") 56.1, which sets out the procedures for presenting undisputed material facts in connection with a motion for summary judgment. The Seventh Circuit has repeatedly affirmed the court's discretion to enforce strict compliance with the requirements of LR 56.1. *See Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016). This is because "[c]ompliance with local rules like [LR] 56.1 ensures the facts material to the issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Courts "are not required to wade through improper denials and legal argument in search of a genuinely disputed fact." *Id.* (citing *Bordelon v. Chi. Sch. Reform Bd.*, 233 F.3d 524, 529 (7th Cir. 2000)). Further, the court may disregard statements and responses

---

[1] Davis moved to strike the Funds' 31-page reply brief on the basis that they "exploited" this court's order granting leave to exceed the 15-page limitation, violated the line spacing requirements included in LR 5.2(c), and "raise[d] new and contested issues of fact and engage[d] in briefing the law beyond what [Davis] articulated" in its response. (R. 93, Def.'s Mot. to Strike.) While the court denied Davis's motion to strike, (R. 95), it has considered the arguments raised therein and disagrees that the Funds used their reply brief to advance new facts and arguments, or that they exploited this court's prior order. Also, although the Funds violated LR 5.2(c) by including five pages of single-spaced arguments responding to Davis's fact response, the court exercises its discretion to enforce local rules when appropriate and declines to strike the improperly spaced arguments. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). However, the court cautions the Funds to comply with applicable rules in future filings.

that do not comply with LR 56.1. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Davis contends that the Funds' statement of facts "include[s] multiple statements in multiple sentences" in violation of LR 56.1(a). (R. 86, Def.'s Fact Resp. at 1-2.) LR 56.1(a) requires that the movant's statement "consist of short numbered paragraphs," including within citations to the record or materials to support the facts in those paragraphs. The Funds' statement includes 41 paragraphs, most of which have multiple sentences, or facts, that technically could have been presented one fact at a time per numbered paragraph. But this mechanical approach would not be efficient where, as here, "[t]he facts in each numbered paragraph are grouped together in a logical manner and, in most instances, supported by the same reference to the record or supporting materials." *Portis v. City of Chi.*, 510 F. Supp. 2d 461, 463 (N.D. Ill. 2007); *see also Nettles-Bey v. Burke*, No. 11 CV 8022, 2015 WL 4638068, at *5 (N.D. Ill. Aug. 4, 2015) (finding plaintiff properly combined sentences because "it would make no sense to split them into separate paragraphs"). To be sure, there is no requirement in LR 56.1 that limits parties to presenting one fact per paragraph. The court therefore finds that the Funds' statement of facts "complies with the spirit if not the letter of the Local Rule." *Portis*, 510 F. Supp. 2d at 463.

The same cannot be said, however, with respect to Davis's statement of additional facts and fact response, which complicates rather than simplifies the court's task. First, some of Davis's additional facts (Paragraph Nos. 43, 44, 46, 47,

49, and 52) include legal arguments or legal conclusions that do not belong in LR 56.1 statements. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). There are also statements (Paragraph Nos. 48 and 78) that are not supported by the document cited as the basis for the facts alleged therein. Therefore, the court disregards these paragraphs for purposes of ruling on the current motion. *See Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, 741 F. Supp. 2d 854, 856 n.1 (N.D. Ill. 2010) ("Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement.").

Further, the Funds contend that several of Davis's additional facts are immaterial. (See, e.g., R. 86, Def.'s Facts ¶¶ 45, 53, 67, 68, 70, 72-74, 77, 79.) LR 56.1 serves to identify the existence of material facts, that is, "facts pertinent to the outcome of the issues identified in the summary judgment motion." *Malec*, 191 F.R.D. at 583. The issue here concerns whether the Funds are entitled to recover their audit fees and attorneys' fees and costs as a result of having to file a lawsuit against Davis to secure necessary records to perform an audit. The court considers Davis's additional facts to the extent they bear on this issue.

Regarding Davis's fact response, it includes an assortment of apparent denials that are evasive and argumentative, just as the Funds describe it. For example, Paragraph Nos. 5, 9, 10, 12, 14, 18-20, 28, 33, 34, and 36 are evasive because they "admit" a reframed version of the Funds' asserted fact and add additional information in response. Therefore, the court deems these facts to have been admitted, along with other facts that Davis did not explicitly admit or deny in

Paragraph Nos. 6 and 30. *See Bordelon*, 233 F. 3d at 528 (finding requirements for LR 56.1 response "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted"). Likewise, the court will not address improper arguments that Davis raises in its response, including those arguments in Paragraph Nos. 13, 15, 16, 18, 19, 26, 34, 36, and 39 of its response, because a "[LR] 56.1(b) response is not the platform to present a party's argument." *Portis*, 510 F. Supp. 2d at 464.

Davis also sets forth facts in many of its response paragraphs that arguably belong in its statement of additional facts pursuant to LR 56.1. (See, e.g., R. 86, Def.'s Fact Resp. ¶¶ 5, 10); *see* LR 56.1(b)(3) (explaining that response must include both "a response to each numbered paragraph in the moving party's statement," LR 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs[] of any additional facts that require the denial of summary judgment," LR 56.1(b)(3)(C)). Thus, the court only considers the facts in Davis's response to the extent they are properly set out in its statement of additional facts, and disregards those in Davis's response brief that are not in its statement. *See Greene v. CCDN, LLC*, 853 F. Supp. 2d 739, 744 (N.D. Ill. 2011).

Finally, the Funds assert that some of Davis's denials are not supported by citations to the record or supporting materials. (See, e.g., R. 86, Def.'s Fact Resp. ¶¶ 15, 21, 23, 27-29, and 33.) LR 56.1 makes it the "litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis*, 807 F.2d at 219 (citing LR 56.1). To

the extent that Davis failed to comply with this requirement in the above-referenced paragraphs, or in any others, the court disregards those alleged facts.

**B.    The 2016 Audit Case**

The Funds and Davis also object to each other's reliance on materials obtained in connection with the parties' previous case in this district, No. 16 CV 9505 (the "2016 Audit Case").  In the 2016 Audit Case, the Funds filed suit against Davis to compel Davis to submit to an audit of its records for the time period from June 1, 2014, through December 31, 2016 ("2014-2016"), which is the audit period in between the two audit periods that are at issue in this case.  (R. 74, Pls.' Facts ¶ 4.) The 2016 Audit Case was voluntarily dismissed in March 2018 by stipulation.  (Id.) Notably, the court did not make any findings of fact or conclusions of law in that case.  For this reason, the court does not rely on any stipulations, declarations, or settlement materials generated in connection with the 2016 Audit Case to decide the merits of the current motion.

**Facts**[2]

The Funds each constitute an "employee welfare benefit plan" within the meaning of ERISA.  (R. 75, Pls.' Facts ¶ 3.)   CRF is a "labor management committee" within the meaning of the LMRA and is not covered by ERISA.  (Id. ¶ 4.)   Davis is an Indiana limited liability company that provides excavation services to its customers in the construction industry.  (Id.; R. 86, Def.'s Facts ¶ 64.)

---

[2]  The facts are recited in the light most favorable to Davis, the nonmoving party. *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

At all relevant times Davis has been an "employer" within the meaning of ERISA and the LMRA. (R. 9, Answer ¶ 4.)

In 2004 Davis entered into a memorandum of agreement ("MOA") with the International Union of Operating Engineers, Local 150, AFL-CIO (the "Union"). (R. 75, Pls.' Facts ¶¶ 2, 8.) Under the MOA, Davis agreed to be bound by the terms of a master agreement between the Union and the Highway Contractors of Lake, Porter, LaPorte and St. Joseph Counties (the "Four County Highway Contractors Group") and successive CBAs between them unless a notice of termination was served. (Id. ¶ 8.) Two different CBAs between the Union and the Four County Highway Contractors Group are relevant here, one covering May 1, 2011, through April 30, 2014, and another covering May 1, 2014, through April 30, 2017.[3] (Id. ¶ 9.) Davis also agreed to be bound by the terms of the Funds' respective agreements and declarations of trust ("Trust Agreements"), which are incorporated by reference into the CBAs. (Id. ¶ 10.)

The CBAs and Trust Agreements incorporated therein require Davis to make fringe benefit contributions to the Funds. (Id.) The Trust Agreements grant the Funds authorization to:

> [E]xamine the payroll books and records, including state and federal employment tax returns of each Employer, and cash disbursement records whenever such examination is deemed necessary by the Trustees in connection with the proper administration of the Trust.

---

[3] Because the provisions in the two CBAs are virtually identical, except for different time periods, wages, and contribution rates, this court will refer to the provisions of both agreements jointly. (Compare R. 75-2, Ex. 2, 2011 CBA with id., Ex. 3, 2014 CBA.)

(R. 86, Def.'s Facts ¶ 42.)  The Trust Agreements further state:

> Each Employer shall promptly furnish to the Trustees, on demand, any and all necessary records of dates of birth, social security numbers, amount of wages paid and hours worked and any other payroll records and information including state and federal employment tax returns, that the Trustees may require in connection with administration of the Trust Fund and for no other purposes.[4]

(Id.)  The Trust Agreements also provide that:

> In the event that upon audit made by the Trustees and/or upon other evidence it is found by the Trustees that an Employer has failed to make required Employer Contributions, the Trustees are authorized and empowered: (a) To impose and receive from such Employer all costs of the audit [and] (d) To impose and receive from such Employer all costs, audit expenses and attorneys' fees incurred by the Trustees in enforcing the provisions hereof.

(R. 75, Pls.' Facts ¶ 12.)  The parties do not dispute that the terms of the MOA and CBAs were in effect until May 31, 2017.[5]  (R. 86, Def.'s Facts ¶ 67.)  Davis also stipulated that it had an obligation to make fringe benefit contributions through April 30, 2017.  (R. 75-5, Ex. 22, First Set of Stip. ¶ 1.)

On December 12, 2018, the Funds sent Davis a letter advising that Davis must submit to an audit for the time periods from June 1, 2012, through May 31, 2014 ("2012-2014 Audit Period"), and from January 1, 2017, through August 31, 2017 ("2017 Audit Period").  (R. 1-1, Ex. D, Dec. 12, 2018 Audit Letter.)  The letter included a list of documents the Funds needed to complete the audit.  (Id.)

---

[4]  CRF's Trust Agreement has different language and does not include the "for no other purposes" phrase.  (R. 91, Pls.' Fact Reply ¶ 42.)

[5]  The MOA includes an automatic renewal provision that extends the Agreement from year to year unless either party provides written notice three months prior to the CBA's expiration of a desire to amend or terminate the CBA.  (R. 75-1, Ex. 1 ¶¶ 4-5.)

However, Davis did not produce any of the requested documents. (R. 75, Pls.' Facts ¶ 16.)

Not receiving the necessary records, the Funds filed a two-count complaint against Davis in February 2019. (R. 1, Compl.) The Funds claim that Davis "breached its obligations to the [ERISA] Funds and its obligations under the plans by failing to complete an audit as requested by the Funds." (Id. Count I ¶ 8.) The Funds also claim that Davis "breached its obligations to the CRF by failing and refusing to complete an audit as requested." (Id. Count II ¶ 9.) In March 2019 Davis filed its answer denying for the purposes of the ERISA Funds that it breached its obligations by failing to complete an audit as requested. (R. 9, Answer to Compl. Count I ¶ 8.) At the same time, Davis admitted that the CBAs place similar obligations on Davis with respect to CRF as it does the ERISA Funds, and that it "breached its obligations to the CRF by failing and refusing to complete the audit as requested." (Id. Count II ¶ 9.)

Davis served its mandatory initial discovery ("MID") disclosures in April 2019. (R. 75, Pls.' Facts ¶ 21.) Thereafter, the Funds issued their first round of written discovery requests, which included requests to produce still-outstanding documents needed to complete the audit. (Id. ¶ 22.) The court held a status hearing on June 19, 2019, during which the Funds reported that document production for the audit was still incomplete and that it intended to file a motion to compel. (Id. ¶ 24.) Later that same day the Funds agreed to give Davis until June 24, 2019, to submit its overdue discovery responses. (Id. ¶ 25.)

On June 24, 2019, Davis reported that the audit documents were destroyed in a fire "a while back."  (Id.)  Davis served its responses to the Funds' interrogatories and requests for production on that date, but its responses were unverified and incomplete, and lacked records to support its claim that it suffered a fire.  (Id. ¶¶ 25-26.)  Accordingly, on July 19, 2019, the court granted the Funds' motion to compel and ordered Davis to submit its amended discovery responses by August 2, 2019.  (R. 22.)  This deadline was later extended to September 30, 2019, based on Davis's need to retain new counsel.  (R. 23; R. 34; R. 35.)

On October 8, 2019, the Funds reported that audit-related records were still outstanding.  (R. 36, Pls.' Status Rep.)  The court then established a "firm deadline" of December 2, 2019, for Davis to provide the Funds with the remaining audit documents, including recently requested invoices for the 2017 Audit Period.  (R. 40.)  Davis met this deadline, and the Funds completed the audit in January 2020.  (R. 75, Pls.' Facts ¶¶ 37-38.)  According to the audit, Davis still owes contributions to the Funds.  (Id. ¶ 39.)  Davis disputes that it owes any delinquent contributions.

Throughout the first half of 2020 the parties discussed settlement, but they were unable to reach an agreement.  (Id. ¶ 40.)  Shortly after the parties jointly consented to proceed before this court, the Funds requested leave to file a motion for partial summary judgment on the issue of their entitlement to attorneys' fees and costs.  (R. 63; R. 66, Jt. Status Rep.)  The Funds explained that the amount of the delinquent contributions the audit identified is relatively small when compared to the amount of attorneys' fees that have accrued, and that a ruling on the fee issue

would move this case toward a speedy resolution. (R. 66, Jt. Status Rep. at 1-2.) This court agreed and, over Davis's objection, ordered a stay of discovery pending resolution of the Funds' motion for partial summary judgment. (R. 67; R. 68; R. 70.)

## Analysis

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue of material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 814 (7th Cir. 2017). A material fact is a fact relevant to the outcome of the pending action. *See Bunn v. Khoury Enters., Inc.*, 753 F.2d 676, 681 (7th Cir. 2014). "A 'genuine issue' exists with respect to any such material fact . . . when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 681-82 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Conversely, "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for the jury to do." *Bunn*, 753 F.3d at 682 (emphasis in original).

## A.    Right to Audit

As a threshold matter, Davis contends that the Funds are not entitled to conduct the requested audit. Specifically, Davis argues that the Funds have no right to audit under the CBAs and that, even if they do, that right "ceased" when the MOA and the most recent CBA terminated on May 31, 2017. (R. 85, Def.'s Resp. at 7-10.) Davis also argues that the Funds' request to audit its records was made

for an improper purpose, specifically "to support union harassment or to force it out of business." (Id. at 8.) The Funds respond that the Trust Agreements, which are incorporated by reference into the CBAs, expressly provide that the Funds have the right to audit records. (R. 92, Pls.' Reply at 3.) The Funds contend that Davis's position on this motion for partial summary judgment—that the Funds are not entitled to conduct the requested audit—is inconsistent with its earlier position in discovery. (Id. at 3-4.) The Funds also argue that Davis's improper purpose claim is not supported by the facts or the law. (Id. at 6-8.)

The court finds that the Funds have the right under the CBAs to perform an audit of Davis's books and records for the period that Davis was covered by the CBAs, namely, the 2012-2014 Audit Period and a portion of the 2017 Audit Period through May 31, 2017 (the termination date of the most recent CBA). First, the CBAs expressly incorporate the terms of the Trust Agreements. (R. 75, Pls.' Facts ¶ 10.) The Trust Agreements, in turn, provide the Funds with the authority to demand "any and all necessary records" and "any other payroll records and information" that they "may require in connection with the administration of the Trust Fund and for no other purposes." (R. 85, Def.'s Facts ¶ 42.) The Trust Agreements also provide the Funds or their authorized representative with the authority to examine records "whenever such an examination is deemed necessary by the Trustees in connection with the proper administration of the Trust." (Id.) Therefore, the CBAs and the Trust Agreements together confer on the Funds a right to audit.

12

Second, Davis stated in its answers to interrogatories, and more specifically in its answer to Interrogatory No. 3, that "it must comply with the Plaintiffs' request for fringe benefit contribution audit for the dates and times up to its withdrawal of recognition."  (R. 75, Pls.' Facts ¶¶ 26, 33.)  In other words, Davis does not dispute that the Funds have a right to audit its records for the 2012-2014 Audit Period and a portion of the 2017 Audit Period through May 31, 2017.  This is borne out by Davis's answer to Interrogatory No. 1 (to which Interrogatory No. 3 refers) in which Davis stated that "[a] portion of the second applicable period has no effective underlying [CBA]" and that it notified the Union "it was withdrawing recognition upon expiration."  (Id. ¶ 33.)  Although the most recent CBA, by its own terms, expired on April 31, 2017, Davis asserts and the Funds do not dispute that it actually terminated on May 31, 2017.  (R. 86, Def.'s Facts ¶ 67.)  Given this admission, Davis's assertion that the Funds have no right to audit under the CBAs, at least for the 2012-2014 Audit Period and a portion of the 2017 Audit Period through May 31, 2017, is without merit.

Third, the court agrees with the Funds that Davis cannot change its position on this issue at the summary judgment stage.  *See S.E.C. v. Cook*, No. 13 CV 1312, 2015 WL 5022152, at *22 (S.D. Ind. Aug. 24, 2015) (noting defendant on summary judgment "is not permitted to contradict his interrogatory responses in subsequent claims and arguments").  Davis now argues that the Funds do not have a right to conduct a post-termination audit.  (R. 85, Def.'s Resp. at 9-10.)  But Davis previously admitted in discovery that it is obligated to comply with the Funds'

"request for fringe benefit contribution audit for the dates and times up to its withdrawal of recognition." (R. 75, Pls.' Facts ¶¶ 26, 33.) Davis also stipulated that it had an obligation to make fringe benefit contributions through April 30, 2017. (R. 75-8, Ex. 22 ¶ 1.) Davis did not raise the post-termination audit defense in its answer, MID disclosures, or any of its responses to discovery despite having multiple opportunities to do so. Therefore, Davis's late-presented defense is unavailing.[6]

Fourth, although Davis argues that the Funds' request to audit its records is made for an improper purpose, such an assertion is untimely because Davis has already turned over its records and the Funds have already completed the audit. Indeed, there have been numerous court hearings related to the documents needed to complete the audit and the status of the audit's completion and Davis did not raise this issue at any of those hearings. Instead, Davis waited until it was faced with the prospect of paying its opponents' attorneys' fees and costs. If Davis's argument were accepted at this stage, time spent through the duration of this case and discovery to collect the audit-related materials, and time spent to conduct the audit itself, would be rendered useless. Based on these circumstances, Davis has waived its improper purpose claim. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (explaining defendant waives an argument that it selects not to assert as a matter of strategy).

---

[6] Davis's assertion in a footnote that a pre-suit audit operates as a condition subsequent to the Funds' right to sue to compel an audit, (R. 86, Def.'s Resp. at 8 n.1), runs contrary to the plain language of the Trust Agreements.

Fifth, Davis raises a "covered work" argument that is not relevant to the current motion. Davis contends that the Funds are not entitled to fees under ERISA because the auditors have incorrectly assumed that the work performed by the individuals identified in the audit report was "covered work" for which it was obligated to contribute to the Funds. (R. 85, Def.'s Resp. at 5-6, 9.) Even if this argument has merit, the court declines to decide whether covered work was in fact performed. At the present time the Funds seek a judgment for attorneys' fees and costs associated with their efforts to obtain audit-related materials as well as fees to complete the audit. The Funds are not seeking a judgment for the allegedly delinquent contributions the audit identifies. Therefore, Davis's covered-work argument is appropriately left for another day.

## B.   ERISA

Turning to the merits of the Funds' motion for partial summary judgment, the Funds first claim that they are entitled to audit fees and attorneys' fees and costs pursuant to Section 1132(g)(2) of ERISA. (R. 74, Pls.' Mem. at 9-11.) That section provides that in an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce Section 1145[7] to collect delinquent contributions, when "a judgment in favor of the plan is awarded, the court shall award the plan the unpaid

---

[7] Section 1145, titled "Delinquent contributions," states, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accord with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. There is no dispute that the Funds brought their ERISA claim pursuant to Sections 1132 and 1145. (R. 1, Compl. Count I ¶ 1; R. 75, Pls.' Facts ¶ 17.)

contributions . . . reasonable attorney's fees and costs of the action," and "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). Thus, under Section 1132(g)(2) an award of attorneys' fees and costs is mandatory in any case in which a judgment is entered in favor of the plan as to delinquent contributions. *Laborers' Pension Fund v. RES Envtl., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004). Audit fees are included within the types of "other legal or equitable relief" authorized by Section 1132(g)(2) and may be awarded at the court's discretion. *See Moriarty ex rel. Local Union No. 727, I.B.T. Pension Tr., the Teamsters Local Union No. 727 Health & Welfare Tr. v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005).

The Funds argue that they are entitled to audit fees and attorneys' fees and costs because the court has issued multiple orders directing Davis to turn over its books and records for an audit and therefore, according to them, a judgment has been awarded in their favor within the meaning of Section 1132(g)(2). (R. 74, Pls.' Mem. at 11.) The Funds point out that other courts in this district have found that "when the court orders the defendant to turn over its books and records, the court has entered a 'judgment in favor of the plan.'" *See Chi. Dist. Council of Carpenters Pension Fund v. Sciortino Contractors, Inc.*, 934 F. Supp. 277, 279 (N.D. Ill. 1996). Alternatively, the Funds argue that they are "prevailing parties" and thus entitled to fees and costs under Section 1132(g)(2). (R. 74, Pls.' Mem. at 11.) Davis does not

meaningfully respond to these arguments other than to state that the cases cited by the Funds are factually distinguishable from this case.[8]  (R. 85, Def.'s Resp. at 9-10.)

The court finds that the Funds' request for attorneys' fees and costs and audit fees under Section 1132(g)(2) puts the cart before the horse.  The Funds essentially contend that Davis's conduct forced them to file this lawsuit and delayed the completion of the audit, and that Davis should therefore be responsible for paying their fees and costs.  But at this juncture the court has only issued orders setting deadlines for discovery and compelling production of documents needed to perform the audit.  The court has not issued a "judgment in favor of the plan" as to delinquent contributions allegedly owed by Davis.  By its express terms, Section 1132(g)(2) requires such a finding to trigger the mandatory award.  That provision enforces Section 1145, which pertains to "[d]elinquent contributions" and requires "[e]very employer who is obligated to make contributions" to a plan to make such contributions in accordance with the applicable plan or CBA.  Where "a judgment in favor of the plan" is entered pursuant to Section 1145, Section 1132(g)(2) requires a mandatory award of: "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages  .  .  .

---

[8]  In a section occupying less than one page, Davis repeats arguments it previously made (and this court already addressed) or raises new arguments it fails to develop fully and, therefore, waives.  *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 n.1 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments unsupported by pertinent authority are waived.").  Nonetheless, the court addresses the merits of the Funds' request for fees and costs to determine whether they have demonstrated that such relief is appropriate at this stage.

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." Here, the court has not yet determined whether Davis owes any unpaid contributions, interest, or liquidated damages. The Funds' request for fees and costs is therefore premature, and Section 1132(g)(2) does not permit such an award at this time.

Other courts in this district have interpreted Section 1132(g)(2) in similar contexts and have issued rulings consistent with this conclusion. For example, in *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, No. 86 CV 7815, 1996 WL 633958, at *1 (N.D. Ill. Oct. 2, 1996), the court found that a plaintiff pension fund was not entitled to attorneys' fees and costs under Section 1132(g)(2) because the Seventh Circuit had reversed the "judgment in favor of the plan." *See also Ill. Conference of Teamsters & Emp'rs Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1368 n.6 (7th Cir. 1995) (reversing judgment in favor of the plan and noting plaintiff's request for mandatory attorneys' fees under Section 1132(g)(2) was "premature" because final judgment had not been entered). Similarly, in *Sullivan v. Gavin*, No. 94 CV 159, 1995 WL 144392, at *3 (N.D. Ill. March 31, 1995), the court determined that a prior order compelling discovery was not a "judgment in favor of the plan," and thus Section 1132(g)(2) "preclude[d] recovery of attorney's fees and costs." In denying fees and costs, the court in *Sullivan* explained that a court "order" compelling discovery is not the same as a dispositive "judgment" for purposes of Section 1132(g)(2). *Id.* In another analogous case, a court found that when a defendant employer submits to an audit, that does not constitute a

"judgment in favor of the plan" under Section 1132(g)(2).  *See Chi. Dist. Council of Carpenters Pension Fund v. Allstate Contractors, Inc.*, No. 94 CV 3305, 1995 WL 470222, at *1 (N.D. Ill. Aug. 7, 1995) (denying request by funds for attorneys' fees and costs because judgment had not been entered in favor of the plan).  These cases demonstrate that absent a judgment entered in their favor, the Funds cannot recover attorneys' fees and costs under Section 1132(g)(2), even if they obtained part of the relief they sought as a result of filing a lawsuit to enforce Section 1145.

In so ruling, the court finds unpersuasive the Funds' argument that *Sciortino* and related cases establish that an order compelling discovery constitutes a judgment in favor of the plan.  In *Sciortino* the court noted that it was entering judgment in favor of the plan under Section 1132(g)(2) because: (1) it had ordered the defendant to "turn over its books and records" so that the plaintiff trust funds could conduct an audit to determine whether the defendant owed unpaid contributions; and (2) it had ruled that the defendant in fact owed delinquent contributions to the trust funds.  934 F. Supp. at 279.  The court stated that, under either ground, a mandatory award of attorneys' fees was required under Section 1132(g)(2).  *Id.*  Given the express terms of Section 1132(g)(2), this court disagrees that the former reason—classifying an order compelling discovery as a judgment—is sufficient to trigger a mandatory award.  In any event, the *Sciortino* court had a legitimate basis to conclude that a mandatory award was required—the defendant owed delinquent contributions.  *Id.* at 279 & n.5.  The same is not true here.  As explained above, the court has not issued a judgment in favor of the plan finding

19

that the Funds are entitled to the amount of delinquent contributions identified in the audit report.

Likewise, the court is not convinced by two cases relied upon by the court in *Sciortino*. In the first case, *Masonry Institute v. Grove Construction, Inc.*, No. 93 CV 2754, 1994 WL 148681, *4 (N.D. Ill. April 13, 1994), the court determined that "by obtaining access to the defendant's books and records, the plaintiffs clearly obtained the relief which they sought"—an accounting and payment of any delinquent contributions. Although no deficiency was found during the audit, because the defendant did not provide access to its books and records until after the lawsuit was filed, the court found that the plaintiffs still succeeded on a "significant issue in litigation" that allowed them to "achieve[] some of the benefit the parties sought in bringing suit." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). However, the reasoning employed by the *Masonry* court stems from application of Section 1132(g)(1), not Section 1132(g)(2). To be sure, in applying Section 1132(g)(1), the Supreme Court has determined that a court may award fees in an ERISA case in which the plaintiff achieved "some degree of success on the merits." *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 252 (2010)[9]; *see also Hakim v. Accenture U.S. Pension Plan*, 901 F. Supp 2d 1045, 1051 (N.D. Ill. 2012) (noting that Court's ruling in *Hardt* replaced the "prevailing party" standard previously employed in the Seventh Circuit for awarding fees in ERISA cases under Section 1132(g)(1)). In any event, Section 1132(g)(2) expressly requires a judgment in favor of the plan and

---

[9] The plaintiff in *Hardt* sued to receive long-term disability benefits.

says nothing about a "degree of success" or a "prevailing party." *Masonry* is therefore inapplicable here.

The same is true with respect to the second case, *Iron Workers Mid-America Pension Fund v. Imperial Glass Structures, Inc.*, No. 92 CV 6380, 1993 WL 372203 (N.D. Ill. Sept. 15, 1993). The court in *Imperial Glass* awarded attorneys' fees and costs pursuant to Section 1132(g)(2) based on the plaintiff's status as a "prevailing party." *Id.* at *1-2. The court found that a party prevails in an action if it "succeed[s] on any significant issue . . . which achieves some of the benefit the parties sought in bringing suit." *Id.* at *2 (internal quotations and citation omitted). But as discussed with respect to *Masonry*, such reasoning has no application to fee or cost awards under Section 1132(g)(2). And the court that issued the *Imperial Glass* decision later issued a decision in *Sullivan*, 1995 WL 144392, at *3, finding that an order compelling discovery did not constitute a "judgment in favor of the plan" under Section 1132(g)(2). This court therefore declines to follow *Sciortino* or the cases on which it relied.

Where, as here, Davis vigorously disputes that delinquent contributions identified in the audit report are owed to the Funds, and the court has not issued a judgment in favor of the Funds, the court has no basis for awarding attorneys' fees and costs or audit fees under Section 1132(g)(2) to the ERISA Funds. Of course, if the court later should rule that enforcement of Section 1145 is appropriate here, resulting in a judgment in favor of the plan, the Funds may renew their request for

21

fees and costs pursuant to Section 1132(g)(2).  Accordingly, the Funds' motion for partial summary judgment on this issue is denied at this stage.

Turning to the Funds' alternative argument that they are entitled to fees and costs pursuant to Section 1132(g)(1), the Funds do not explain why they believe that provision applies here.  (See R. 74, Pls.' Mem. at 12-14; R. 92, Pls.' Reply at 24-28.) Nor does Davis challenge the applicability of Section 1132(g)(1).  (See R. 85, Def.'s Resp. at 11-15.)  Nonetheless, there is no dispute that the Funds have brought their ERISA claim pursuant to Sections 1132 and 1145.  (R. 1, Compl. Count I ¶ 1; R. 75, Pls.' Facts ¶ 17.)  Although the Funds do not specify the provision within Section 1132 on which they rely, Section 1132(g)(2) is the sole provision allowing an award for fees and costs in actions enforcing Section 1145.  Indeed, Section 1132(g)(2) applies to "any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title."

Section 1132(g)(1), by contrast, does not apply to actions brought to enforce Section 1145.  *See Allstate Contractors, Inc.*, 1995 WL 470222, at *2.  Section 1132(g)(1) expressly limits its applicability to cases "other than an action described in paragraph (2)," which as discussed enforces Section 1145.  Thus, by its own terms Section 1132(g)(1) does not apply to cases brought to collect delinquent contributions under Section 1145.  Here, although the Funds sought an audit to determine whether Davis owed such contributions, they also requested payment of

contributions found to be due.[10]  (R. 1, Compl. Count I.)  Because the Funds seek to enforce Section 1145, their only avenue for relief as to fees and costs is through Section 1132(g)(2).

## D.  LMRA

The Funds also argue that both the ERISA Funds and CRF are entitled to audit fees and attorneys' fees and costs pursuant to Section 301 of the LMRA, which does not specifically provide for such a remedy but permits actions to enforce rights arising out of CBAs.  29 U.S.C. § 185; *see also Int'l Union, United Auto. Aerospace & Agr. Implement Workers of Am., UAW v. Keystone Consol. Indus., Inc.*, 793 F. 2d 810, 814 (7th Cir. 1986).  Here it is undisputed that the Trust Agreements, which are incorporated by reference into the CBAs, provide that when an audit and/or other evidence reveals that an employer is delinquent in its contributions, the Funds are entitled to collect "all costs of the audit" and "all costs, audit expenses and attorneys' fees incurred by the Trustees in enforcing the provisions hereof." (R. 75, Pls.' Facts ¶ 12.)  The Funds state that the audit identified delinquent contributions and therefore they are entitled to partial summary judgment on this claim.  (R. 75, Pls.' Mem. at 15).  Davis does not respond to the Funds' LMRA argument.

By advancing no argument as to the Funds' claimed right to attorneys' fees and costs and audit fees under the LMRA, Davis has waived any arguments it may

---

[10]  As was the case in *Allstate Contractors, Inc.*, 1995 WL 470222, at *2, here the Funds have identified no other ERISA provision "authoriz[ing] a suit to compel an audit for a reason other than to determine if delinquent contributions are owed."

have had in opposition. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Nevertheless, the court must still determine whether the Funds have met their burden of establishing an entitlement under the Trust Agreements to recover their fees and costs, and at this stage they have not. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) ("Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only if appropriate—that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.") (internal quotations omitted).

The language of the Trust Agreements empowers the Funds to collect audit fees and attorneys' fees and costs in the event an audit or other evidence reveals that an employer has failed to make contributions. In other words, fees and costs are allowed only where there are unpaid contributions attributable to the employer. Here no determination has been made regarding Davis's liability for the delinquent contributions identified in the audit report. Therefore, the Funds incorrectly assert that they have a contractual right under the CBAs incorporating the Trust Agreements to collect audit fees and attorneys' fees and costs, and the court denies their motion for partial summary judgment pursuant to the LMRA.

**Conclusion**

For the foregoing reasons, the Funds' motion for partial summary judgment on the issue of their entitlement to audit fees and attorneys' fees and costs is denied at this stage.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**