## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MIDWEST OPERATING ENGINEERS** | ) | |
| **WELFARE FUND**, *et al.*, | ) | **No. 19 CV 1153** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **DAVIS & SON EXCAVATION, LLC,** | ) | |
| | ) | **November 29, 2021** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiffs Midwest Operating Engineers Welfare Fund, Midwest Operating Engineers Pension Trust Fund, Operating Engineers Local 150 Apprenticeship Fund, Midwest Operating Engineers Retirement Enhancement Fund, Local 150 IUOE Vacation Savings Plan, and Construction, Industry Research and Service Trust Fund (collectively, "the Funds"), filed this action against Defendant Davis & Son Excavation, LLC ("Davis") pursuant to Sections 1132 and 1145 of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 195. The Funds sought an audit of Davis's records pursuant to a memorandum of agreement ("MOA") between the International Union of Operating Engineers, Local 150, AFL-CIO ("Operators' Union") and Davis. The MOA bound Davis to the terms of successive collective bargaining agreements ("CBAs") and trust agreements covering the Operators' Union. The CBAs and trust agreements required Davis to make fringe benefit contributions to the Funds for work performed within the scope of the operators'

functions. The trust agreements further granted the Funds authority to conduct audits in accordance with proper administration of the trusts. The Funds have collected the necessary records from Davis and completed an audit. They now seek recovery of delinquent contributions, attorneys' fees, costs, and audit fees from Davis. They claim that Davis failed to submit contributions for performed work covered by the CBA. Before the court are the Funds' motions *in limine* Nos. 1 and 2 and Davis's motions *in limine* Nos. 1 and 2. For the following reasons the Funds' Motion No. 1 is granted, the Funds' Motion No. 2 is denied, Davis's Motion No. 1 is granted only as to Exhibit No. 22, and Davis's Motion No. 2 is denied:

## Legal Standard

Although not expressly authorized by the Federal Rules of Evidence, the authority to make rulings on motions *in limine* springs from the court's inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented [at trial] because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Evidence may be excluded on a motion *in limine* only when it is inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such

2

a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

## Analysis

The Funds filed motions *in limine* seeking to bar Davis from introducing evidence at trial relating to: (1) declarations obtained by Davis during prior settlement negotiations; and (2) evidence from laborers, including a CBA with the laborers' union, payment data, and correspondence. (R. 117, Pls.' Mot. No. 1; R. 118, Pls.' Mot. No. 2.) In turn, Davis's motions *in limine* ask the court to exclude: (1) evidence post-dating the expiration of the CBA at issue; and (2) drone footage of Davis's employees and construction sites the Funds recorded. (R. 119, Def.'s Mot. No. 1; R. 120, Def.'s Mot. No. 2.) Each side opposes the other side's motions.

### A. The Funds' Motion No. 1

The motion is granted. The Funds seek to exclude declarations Davis obtained from its employees Chris Lane and Joseph Williams on August 7, 2017 ("the Declarations"). (R. 117, Pls.' Mot. No. 1 at 1-2; R. 111-18, Pretrial Order Def.'s Ex. 3; R. 111-19, Pretrial Order Def's. Ex. 4.) The Funds claim that Davis used the

3

Declarations to support a settlement offer in a prior case the Funds filed in 2016 ("the 2016 Case").[1]  (R. 117, Pls.' Mot. No. 1 at 2.)  As such, the Funds argue that the Declarations qualify as "conduct or a statement made during compromise negotiations" and are inadmissible under Federal Rule of Evidence 408.  (Id. (quoting Fed. R. Evid. 408(a)(2)).)  For support the Funds point to an August 8, 2017 settlement offer letter—dated one day after the employees signed the Declarations—in which Davis relies on the Declarations in seeking removal of the Funds' claims for contributions on behalf of Lane and Williams.  (R. 117, Pls.' Mot. No. 1 at 2; R. 111-11, Pretrial Order Pls.' Ex. 22.)  The Funds argue that this August 8, 2017 settlement letter indicates that Davis introduced the Declarations in connection with its negotiation to settle the 2016 Case and that the Declarations should therefore be excluded under Rule 408.  (R. 117, Pls.' Mot. No. 1 at 2.)  Davis responds that the Declarations were not prepared "solely as a part of the settlement negotiations," but instead to establish facts demonstrating the validity of Davis's position based on the personal knowledge of Lane and Williams.[2]  (R. 125, Def.'s Resp. at 4-5.)

---

[1]  The Funds filed a case similar to this one now pending against Davis in 2016 seeking to compel Davis to submit to an audit of its records.  (R. 74, Pls.' Facts ¶ 20.)  The Funds voluntarily dismissed the 2016 Case in March 2018 pursuant to a stipulation.  (Id.)  The court did not make any findings of fact or conclusions of law in that suit.  (R. 97 at 6.)

[2]  Davis also claims that the Funds' use of the August 8, 2017 letter here violates Rule 408 because it is a confidential settlement document.  (R. 117, Pls.' Mot. No. 1 at 3.)  The court generally agrees that settlement communications should not be used as evidence, but the use of the letter is appropriate in this situation where the Funds are seeking to show why Rule 408 applies here.  Both sides could have asked the court to seal the redacted version of the letter but neither side did so.

Rule 408 states that "conduct or a statement made during compromise negotiations about the claim" is not admissible "*on behalf of any party* . . . to prove or disprove the validity . . . of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a) (emphasis added); *see also Brama v. Target Corp.*, No. 14 CV 6098, 2019 WL 5536835, at *7 (N.D. Ill. Oct. 25, 2019) (Rule 408 renders evidence of offers, acceptances, conduct, or statements made during settlement negotiations as inadmissible). Thus, pursuant to Rule 408, the Funds may object to the admissibility of the Declarations because they were made during prior settlement negotiations, even though Davis was the party that offered them.

Davis now seeks to use the Declarations as affirmative evidence to contest liability here. But Davis does not demonstrate in its response to the motion that the subject Declarations were disclosed to the Funds as part of discovery in the 2016 Case. As such, the Declarations fall within the plain meaning of Rule 408(a)(2), and the court thus grants the Funds' Motion No. 1. Given that Rule 408 bars admissibility of the Declarations, the court declines to consider the Funds' alternative arguments for exclusion. (See R. 117, Pls.' Mot. No. 1 at 2-5.) This ruling is limited to the Declarations and is not meant to limit the testimony of either Lane or Williams at trial.

## B.    The Funds' Motion No. 2

The motion is denied. The Funds also seek to bar admission of the CBA Davis has with the laborers' union ("Laborers' CBA"), (R. 111-23, Pretrial Order

5

Def.'s Ex. 8), payment data, correspondence from the laborers' union, (R. 111-17, Pretrial Order Def.'s Ex. 2), and any other evidence tending to show that the laborers' unions' "alleged claim to covered work defeats the Funds' claims." (R. 118, Pls.' Mot. No. 2 at 3.) Davis intends to proffer this evidence to support the claim that the laborers' union, and not the Funds, had jurisdiction over skid steer work, and thus Davis does not owe contributions to the Funds. (Id. at 1; R. 125, Def.'s Resp. at 11; R. 111-4, Def.'s Tr. Br. at 7-8.) The Funds argue that the evidence is not relevant to Davis's defense because the Laborers' CBA was not in effect for the time frame of the audit in question. (R. 118, Pls.' Mot. No. 2 at 1-2.)

Even if the Laborers' CBA was in effect for the relevant time period, the Funds argue that Davis's defense that the Laborers' CBA also covered skid steer work is meaningless because the Funds are entitled to contributions for such work, regardless of whether another CBA covered the same work. (Id. at 2-3 (citing *Trs. of Glaziers v. Glass Masters Ltd.*, No. 02 CV 3503, 2003 WL 1903991, at *1-2 (N.D. Ill. April 17, 2003); *Miron Constr. Co., Inc. v. Operators Local 139,* 44 F.3d 558, 565-67 (7th Cir. 1995); *Hutter Constr. Co. v. Operators Local 139*, 862 F.2d 641, 646 (7th Cir. 1988).) The Funds' argument relies on an excerpt from *Glaziers* stating that an employer operating under two CBAs with two unions is obligated to contribute to the funds of both unions for overlapping work. (Id. at 2 (citing *Glaziers*, 2003 WL 1903991, at *1-2).) The Funds further argue that any evidence about what the laborers may claim as covered work is irrelevant because such

6

evidence constitutes extrinsic evidence, which cannot be used to interpret the CBA in the instant case.  (Id. at 3.)

Davis responds that the evidence is relevant because it supports the laborers' claim to disputed work under the Laborers' CBA.  (R. 125, Def.'s Resp. at 12-13.) Specifically, Davis argues that the Funds have not shown that the laborers' union lacked an executed contract with Davis during the audit period.  (Id. at 11.)  Davis further argues that the laborers' union has a superior claim to the skid steer work because Davis was a party to the Laborers' CBA during the audit period, and Davis paid contributions for Lane's work as a laborer.  (Id. at 11-13.)  As a result, this evidence is not offered to interpret the terms of the CBA, as the Funds argue, but instead to show the laborers' union's claim to disputed work under the Laborers' CBA.  (Id. at 12.)

Davis then distinguishes the cases cited by the Funds, noting that the employer in *Glaziers* admitted to overlapping coverage for the disputed work.  (Id. at 13 (citing *Glaziers*, 2003 WL 1903991 at *2).)  Contrary to the Funds' argument, Davis maintains that the laborers' union has always had exclusive coverage over Lane's skid steer work.  (Id. at 13.)  Davis also argues that the CBA grants Davis the affirmative right to select whether to assign skid steer work to the operators' union, which Davis contends it did not. (Id. at 13, 15-16.)

The Funds have not shown that the evidence pertaining to the Laborers' CBA is irrelevant to all of Davis's defenses.  Notably, the court agrees with Davis that the Funds have not shown that the laborers' union lacked an executed contract with

Davis during the audit period. The Funds point to a June 12, 2017 letter from the laborers' union to Davis to suggest that an agreement did not exist during the audit period. (R. 118, Pls.' Mot. No. 2 at 1-2; R. 111-17, Pretrial Order Def.'s Ex. 2.) In that letter the laborers' union returned Davis's contributions from June 2017 because of Davis's non-signatory status with the laborers in Indiana. (R. 118, Pls.' Mot. No. 2 at 1-2; R. 111-17, Pretrial Order Def.'s Ex. 2.) But whether the laborers' union had a contract with Davis in June 2017 has no bearing on the laborers' potential claim to work performed by Davis before June 2017.

Additionally, the Funds have not shown that any evidence supporting a jurisdictional dispute to audited work between multiple unions is irrelevant to the present case. The cases cited by the Funds are distinguishable from the present action and thus do not support blanket inadmissibility of the evidence. Not only did the employer in *Glaziers* admit to overlapping coverage of audited work—which Davis does not in this case—but the *Glaziers* court relied on the employer's failure to designate which union was to perform the overlapping work—which Davis claims it did with the laborers' union. (R. 125, Def.'s Resp. at 13); *Glaziers*, 2003 WL 1903991, at *2. Further, *Miron* and *Hutter* are distinguishable because the present case does not involve an arbitration, a subcontracting dispute, or a claim under the National Labor Relations Act. *See generally Miron*, 44 F.3d 558; *Hutter*, 862 F.2d 641. For these reasons, the motion is denied. The Funds may renew their objection if applicable at trial.

C.     **Davis's Motion No. 1**

The motion is granted only as to Exhibit No. 22.  Pursuant to Federal Rule of Evidence 402, Davis seeks to bar all nontestimonial evidence dated after the subject CBA expired on April 30, 2017.  (R. 119, Def.'s Mot. No. 1 at 1.)  Davis seeks to bar Exhibit No. 11 (Marc Davis's Fringe Benefit Waiver Request 02/19/18), Exhibit No. 15 (Video of Sand Creek subdivision, Chesterton, IN 04/05/18, 2:37 p.m.), Exhibit No. 16 (Video of Sand Creek subdivision, Chesterton, IN 04/12/18, 3:12 p.m.), Exhibit No. 17 (Photographs/Video Stills of Davis & Son Employees), Exhibit No. 22 (Davis's August 8, 2017 settlement offer letter and LaRose/Miller Email), and Exhibit No. 31 (Video of Olson Park, IN 03/19/18 7:58 a.m.).  (R. 123, Pls.' Resp. at 4.)  Davis argues that these exhibits are not relevant because Davis could not have committed violations of the CBA after it expired.  (R. 119, Def.'s Mot. No. 1 at 2.)  As such, Davis contends this evidence cannot have "a tendency to make a fact more or less probable than it would be without the evidence."  (Id. at 1 (citing Fed. R. Evid. 401).)  Davis also argues that the court should exclude this evidence pursuant to its discretion under Rule 403 to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues[.]"  (Id. at 4 (quoting Fed. R. Evid. 403).)

The Funds counter that they do not plan to use nontestimonial evidence collected after April 30, 2017, to show that Davis breached the CBA after its expiration.  (R. 123, Pls.' Resp. at 4-5.)  Instead, the Funds contend that the disputed exhibits directly relate to defenses Davis raises in this case.  (Id. at 5.)

9

Specifically, the Funds argue that their Exhibit No. 11 is relevant to show that Davis understood the CBA to apply to the types of work Davis performs, contrary to its position in this case. (Id.; R. 111-4, Pretrial Order Ex. D at 8-11.) The Funds likewise contend that Exhibit Nos. 15-17 and 31 contradict the claim of Davis owner Marc Davis that he was the only individual who performed the work covered by the CBA. (Id.; R. 111-16, Pretrial Order Def.'s Ex. 1 at 4.) As for their Exhibit No. 22, the Funds assert that the settlement letter shows that the Declarations Davis seeks to use at trial were part of a settlement offer. (R. 123, Pls.' Resp. at 5.)

Because Exhibit No. 22 is a settlement letter, it is inadmissible under Rule 408 in accordance with the court's ruling on the Funds' Motion No. 1. Otherwise, Davis fails to show that the nontestimonial evidence identified in its motion is inadmissible on any ground. The primary defect with Davis's position is that its argument is too general and underdeveloped for the court to find that the evidence cannot be admissible for any reason. Accordingly, the motion is granted only as to Exhibit No. 22. Davis may renew its objection if applicable at trial.

## D.    Davis's Motion No. 2

The motion is denied. Davis also seeks to exclude drone footage of Davis's employees and construction sites, as shown in the Funds' Exhibit Nos. 15, 16, 30, and 31.[3] (R. 120, Def.'s Mot. No. 2 at 1.) Davis alleges that the drone footage must be excluded under Federal Rule of Evidence 402 because the Funds violated Federal Aviation Administration ("FAA") regulation 14 C.F.R. § 107.39 in operating the

---

[3] The Funds dispute that Exhibit No. 31 consists of drone footage. (R. 123, Pls.' Resp. at 1 n.1.)

drone over human beings—here, Davis's employees—who did not participate in the operation of the drone and were not protected under a covered structure or stationary vehicle. (Id. at 2 (citing 14 C.F.R. § 107.39 ("no person may operate a small, unmanned aircraft over a human being unless—(a) That human being is directly participating in the operation of the [drone]; (b) That human being is located under a covered structure or inside a stationary vehicle that can provide reasonable protection from a falling [drone]; or (c) The operation meets the requirements of at least one of the operational categories specified in subpart D")).)

Davis further argues that the drone footage must be excluded at trial because it captured audio without the consent of Davis's employees in violation of 18 U.S.C. § 2511, making it inadmissible under 18 U.S.C. § 2515. (R. 120, Def.'s Mot. No. 2 at 2-3.) Section 2511 prohibits the intentional interception of "any wire, oral, or electronic communication" without prior consent, and Section 2515 in the same title bars the admission of such interceptions as evidence at trial. Finally, Davis argues that the drone footage is irrelevant because it was recorded after the expiration of the CBA. (R. 119, Def.'s Mot. No. 1; R. 120, Def.'s Mot. No. 2 at 3.)

The Funds counter that the drone footage does not violate any FAA regulations or federal statutes because the footage itself makes clear the drone was not flown "over" any person. (R. 123, Pls.' Resp. at 2.) The Funds also note that Davis does not provide authority for its claim that those regulations prohibit the introduction of evidence collected via drone. (Id.) As for the 18 U.S.C. § 2511 argument, the Funds contend that the drone footage did not capture any "wire or

oral communication," making that particular section inapplicable. (Id. at 2-3.) The Funds further respond that the drone footage taken in the 11-month period following the CBA's expiration is relevant because, according to them, the footage contradicts Davis's claim that it does not owe contributions under the CBA because owner Marc Davis solely performed heavy equipment operation. (Id. at 3.) The Funds assert that the drone footage shows Davis's "routine operations" involving other Davis employees performing covered work, which makes it more probable than not that individuals other than Marc Davis performed covered work during the relevant time period. (Id. at 3-4 (citing Fed. R. Evid. 401, 406).)

The court finds that Davis has not demonstrated that the drone footage violates any FAA regulations or federal statutes. The drone footage does not show that a drone flew over any person in violation of Section 107.39. (R. 123, Pls.' Resp. at 2.) Additionally, Davis has not identified a basis for the exclusion of evidence under that regulation. *See* Fed. R. Evid. 402 advisory committee notes to 1972 amendment (identifying examples of statutes that explicitly require the exclusion of certain types of evidence). Moreover, the drone footage lacks audio and therefore cannot violate Section 2511. (R. 123, Pls.' Resp. at 2-3.) Because the drone evidence does not include intercepted communications, Section 2515 does not preclude its admission as evidence at trial. Davis has also failed to prove that drone footage is irrelevant and thus inadmissible on all potential grounds.

Having said that, the admission of the drone footage as evidence will require the Funds to provide a proper foundation pursuant to Federal Rule of Evidence 406.

Rule 406 states that "evidence . . . of an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (quoting Fed. R. Evid. 406 advisory committee's notes to 1972 amendment, which further describes habit as a "regular practice" such as "going down a particular stairway two stairs at a time, or giving the hand-signal for a left turn, or of alighting from railway cars while they are moving"); *see also Nelson v. City of Chi.*, 810 F.3d 1061, 1073-74 (7th Cir. 2016); *Patterson v. City of Chi.*, No. 15 CV 4139, 2017 WL 770991, at *4 (N.D. Ill. Feb. 28, 2017) (explaining that "semi-automatic in nature" is akin to hitting the snooze button every day at the same time). The adequacy of sampling and uniformity of response must make it more probable than not that the routine "would be carried out in every instance or in most instances." *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994); *see also Newman* ex rel. *Newman v. McNeil Consumer Healthcare*, No. 10 CV 1541, 2013 WL 4460011, at *14 (N.D. Ill. March 29, 2013) (ruling that three product recalls do not qualify as a routine practice "so ingrained in organizational culture as to be admissible to prove conduct in conformity" under Rule 406). Thus, the Funds must show that the activity captured in the drone footage describes Davis's "regular

response to a repeated specific situation." Fed. R. Evid. 406 advisory committee notes to 1972 amendment.

## Conclusion

For the foregoing reasons, the Funds' Motion No. 1 is granted but Motion No. 2 is denied, and Davis's Motion No. 1 is granted only as to Exhibit No. 22, and Motion No. 2 is denied.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**

14