UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIDWEST OPERATING ENGINEERS WELFARE FUND, *et al.*, | ) ) ) ) ) | No. 19 CV 1153 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| DAVIS & SON EXCAVATION, LLC, | ) ) ) | July 21, 2023 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Midwest Operating Engineers Welfare Fund, Midwest Operating Engineers Pension Trust Fund, Operating Engineers Local 150 Apprenticeship Fund, Midwest Operating Engineers Retirement Enhancement Fund, Local 150 IUOE Vacation Savings Plan, and Construction Industry Research and Service Trust Fund (collectively "the Funds") petition the court for an award of attorneys' fees, costs, and interest. For the following reasons, the Funds' petition is granted in the total amount of $166,550 in fees, $4,095.75 in costs,[1] and $3,413.50[2] in interest:

---

[1] Defendant does not challenge the taxable costs the Funds seek in their petition. (See R. 177, Def.'s Resp.; see also R. 166, LR 54.3 Joint Statement at 2.)

[2] This interest amount is through July 31, 2023. (R. 182 at 1.)

**Background**[3]

The Funds filed this action to collect contributions Defendant Davis & Son Excavation, LLC failed to pay in accordance with Sections 1132 and 1145 of the Employment Retirement Income Security Act, 29 U.S.C. § 1001 ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). The parties consented to this court's jurisdiction, (R. 63), and thereafter stipulated that "the Funds are entitled to a mandatory award of attorneys' fees, costs, and audit fees under ERISA Section 1132(g)(2) if the Funds succeed in establishing that [Defendant] owes delinquent contributions," (R. 111-12, Pls.' Ex. 27, Third Set of Stipulations ¶ 7). In January 2022 the court held a two-day bench trial on the issue of whether Defendant owes delinquent contributions. In lieu of closing arguments, the parties submitted post-trial briefs, and on September 27, 2022, the court ruled in the Funds' favor, finding that Defendant owes delinquent contributions in the amount of $2,549.90, liquidated damages of $509.98, and audit fees of $1,471. (R. 164.)

**Analysis**

The Funds now move the court for an award of attorneys' fees, costs, and interest. (R. 169, Funds' Mot.) Pursuant to the parties' stipulation, the Funds are entitled to "a mandatory award of attorneys' fees" because they succeeded in showing that Defendant owes delinquent contributions. (R. 111-12, Pls.' Ex. 27, Third Set of

---

[3] The court's September 27, 2022 Findings of Fact and Conclusions of Law provides a more complete description of the allegations underlying this action. (R. 164.)

Stipulations ¶ 7.) Defendant does not contest that the Funds are entitled to fees but argues the fees they seek are not reasonable. (See generally R. 177, Def.'s Resp.)

"District judges have considerable discretion in awarding attorney's fees under ERISA." *Chesemore v. Fenkell*, 829 F.3d 803, 816 (7th Cir. 2016) (quoting *Hardt v. Rel. Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)). The party seeking fees bears the burden of establishing the required elements for a fee award. *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Courts generally apply the "lodestar" method to calculate the award under ERISA's fee-shifting statute. *See Pierce v. Visteon Corp.*, 791 F.3d 782, 787 (7th Cir. 2015) ("[F]ee-shifting statutes are designed to ensure that the victims retain full compensation, while the wrongdoer pays the lawyers."). The lodestar figure is determined by taking "the number of hours reasonably expended on the litigation" and multiplying it "by a reasonable hourly rate." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009). The lodestar number "can then be adjusted" based on discretionary factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), although "many of these factors are usually subsumed within the initial calculation," *Anderson*, 578 F.3d at 544. In other words, the lodestar amount is presumed reasonable if the party seeking fees has shown that the claimed rate and hours expended are reasonable, and *Hensley* factors such as "novelty and complexity of the issues," "special skill and experience of counsel," "quality of representation," and "[r]esults obtained" are "fully reflected" in the lodestar number. *Blum v. Stenson*, 465 U.S. 886, 897-900 (1984).

The parties here dispute the amount of fees the court should award—including both the reasonableness of the hourly rates the Funds' attorneys are claiming and the number of hours they and their paralegals expended—and whether the Funds are entitled to 12% interest on the unpaid contributions. (See R. 170, Funds' Mem.; R. 177, Def.'s Resp.) The court addresses each issue in turn.

A.  **Reasonable Rate**

The Funds seek a fee award based on what they allege are their attorneys' "standard" hourly rates for legal services performed. (R. 170, Funds' Mem. at 3.) The Funds do not seek the actual rates their attorneys charged them, but rather rates based on a lodestar amount they argue is "consistent with the rates charged by other attorneys for ERISA work in metropolitan areas such as Chicago." (Id. at 1-4; see also R. 169, Funds' Mot. Exs. 17-21.) For attorneys Dale Pierson, Elizabeth LaRose, and Brad Russell, the Funds seek rates of $450, $425, and $300 per hour, respectively, with an increase of $50 per hour for each attorney in 2022. (R. 170, Funds' Mem. at 3.) For their paralegals, the Funds seek $100 per hour. (Id.)

To support these rates, the Funds assert that "[t]he amount plaintiff actually pays his attorney is irrelevant," and that "the determination of what is a 'reasonable' fee is to be made without reference to any prior agreement between the parties." (R. 169, Funds' Mot. at 5 (quoting *Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 861 (7th Cir. 1981)). But the Funds acknowledge that the Seventh Circuit has also instructed that the "best evidence of the market value of legal services is what people pay for it," (id. (quoting *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434,

4

438 (7th Cir. 2004))), and "submit that the applicable rate should be that contemplated by the retainer agreement between the Funds" and their attorneys, which assumes "$200/hour and 2000 hours per year," if this court decides to apply that instruction, (R. 169, Funds' Mot. at 5, Ex. 10 ¶ 6; see also R. 171, Retainer Agreement). For its part, Defendant asserts that the Funds' attorneys' standard rates are "arbitrary and not relevant" to the fee award in this case because they "are well above the rates actually charged to the Funds under the . . . fixed fee retainer agreement," and that the "flat fee of the Funds' union salary rate, or no more than $200/hour," under that agreement is more appropriate. (R. 177, Def.'s Resp. at 5, 7.)

The Funds incorrectly rely on the suggestion that "[t]he amount plaintiff actually pays his attorney is irrelevant" to a fee award. (R. 169, Funds' Mot. at 5.) The Funds cite *Anderson*, 578 F.3d at 545, for the quoted language, but that language does not appear in that decision. The Funds also cite *Sangamo Construction*, 657 F.2d at 861, which does include the passage quoted but in a different context—the reasonableness of rates awarded to government attorneys versus private attorneys in antitrust actions. The Funds do not cite to any authority showing that the quoted passage applies to this case, and the court has found none.

The court agrees with Defendant that the reasonable hourly rate is the one the Funds agreed to pay their attorneys—that is, $200 per hour. *See Wisc. Laborers Health Fund v. Bob Ewers Contracting, LLC*, No. 16 CV 611, 2018 WL 4005736, at *4 (W.D. Wis. Aug. 22, 2018) (rejecting plaintiffs' argument in ERISA case that reasonable hourly rate is "the amount 'similar legal services would fetch'" and

5

applying hourly rate plaintiffs agreed to pay their attorney). Despite the Funds' arguments to the contrary, the "best evidence of the market value of legal services" is what the Funds themselves were willing to pay for them. *Assessment Tech.*, 361 F.3d at 438. To be sure, the Seventh Circuit previously considered how much weight should be afforded "to the terms of the contract between the party and his lawyer in determining an award of attorneys' fees," and decided that "controlling weight" should be given to the contractual terms, such that "the contract places a ceiling on what the court can award the lawyer." *Id.* (citing favorably *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir. 1986) (considering fee award and finding that "sum greater than what the client has been charged may not be assessed")); *see also Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) (referring to "lawyer's actual billing rate" as "superior evidence" when determining reasonable hourly rate). Accordingly, the "actual billing rate" the Funds paid is the "presumptively appropriate" market rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996) (internal quotations omitted).

As for the paralegals, the Funds provided no contracted rates for them, but the rate requested by the Funds is reasonable, particularly given that the type of work they performed—from having reviewed the time sheets—was "sufficiently complex" to justify such rates. *See People Who Care*, 90 F.3d at 1315 (finding award of paralegal fees appropriate for "sufficiently complex" work performed, such as "factual investigation, conducting legal research, summarizing depositions, checking citations, compiling statistical and financial data, preparing court documents, serving

6

process, and discussing the case with attorneys"). Furthermore, the Funds' judicious use of support staff in this case effectively reduced the amount of overall fees, thereby resulting in a more "cost-effective delivery of legal services." *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989).

**B.     Reasonable Hours**

The Funds contend that their attorneys expended a reasonable number of hours—a total of 1,211.75 hours—litigating this case for three years. (R. 169, Funds' Mot. Ex. 10 ¶ 11; R. 170, Funds' Mem. at 4.)  The Funds also represent that they already removed 140 hours from the total number of hours for which they seek reimbursement, most of which were "incurred by less experienced staff." (R. 169, Funds' Mot. Ex. 9 ¶ 14; R. 170, Funds' Mem. at 4.)

Defendant responds that the Funds failed to exercise "billing restraint" and are now claiming attorney fees for "hours that are excessive, redundant, or otherwise unnecessary." (R. 177, Def.'s Resp. at 10 (quoting *Spegon*, 175 F.3d at 552).)  For support, Defendant cites the 551.9 hours it expended and argues, among other things, that: the Funds' time descriptions are too brief to ascertain whether the charges are warranted; the Funds' attorneys and paralegals engaged in block billing, billed in 15-minute increments, and seek fees on unsuccessful motion practice; and the total amount of fees sought is disproportional to the miniscule amount recovered.  The Funds reply that they succeeded on all claims and regardless of the amount of delinquent contributions recovered, ERISA's fee-shifting statute permits "the full recovery of fees." (R. 180, Funds' Reply at 6 (citing *United Auto. Workers Local 259*

7

*Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 295 (3d Cir. 2007) (recognizing that "[f]unds are burdened by employers who needlessly extend or complicate litigation for small delinquencies")).)

As to the proportionality argument, Defendant is correct that the value of the case—when measured by the delinquent contribution recovered—is minimal when compared to the fee amount the Funds seek. However, because the parties were unable to resolve this matter, the Funds had no choice but to prosecute the case through trial. Not doing so would have sent the wrong message to other members of the CBA—that so long as the amounts of the delinquent contributions are minimal, the Funds would not prosecute the delinquent employers. This would jeopardize the contribution system and shift the financial obligations to those employers who adhere to their responsibilities under the CBA. For this reason, the court declines to consider the amount recovered in this case when assessing the reasonableness of the fee request, especially because the Funds indeed made good faith efforts to resolve this case prior to filing their motion for partial summary judgment.

The court also declines to strike the total number of hours the Funds expended in connection with the briefing of their unsuccessful motion for summary judgment. Defendant claims the Funds expended over 400 hours, but the court calculates this number to be about 340 hours, which is still excessive. In any event, the Funds correctly argue in their reply that they prevailed on principal claims, which were to compel an audit of Defendant's records and to collect delinquent contributions based on that audit. The fact that a certain litigation strategy did not pan out does not

8

mean that the hours the Funds expended are not reasonably associated with the claims on which the Funds prevailed. Ironically, Defendant would be paying lower amount of fees now if the court had granted the motion for summary judgment because the Funds' objective was to terminate the case more quickly without having to try the case on the contribution issue. Besides, and as the Funds note, briefing the motion for summary judgment permitted the parties and the court to narrow the issues for trial. As such, the motion practice was not a futile exercise, and the court declines to strike all associated hours.

That said, to calculate the reasonable fee award, the court performed a line-by-line review of the time entries submitted with Defendant's arguments in mind—including the attorneys' failure to exercise "billing restraint" when working a case which seeks less than $10,000 in damages—and discounted attorney and paralegal hours lacking the particularity needed for the court to determine whether they were necessary, hours deemed excessive for the tasks performed, and hours not necessary to prosecute this case. (See R. 169, Funds' Mot. Exs. 13-15, 22-23.) When making these determinations, the court reviewed "DAVIS AND SON TIME AND WORK RECORDS" marked as "P00957" through "P01162." (R. 169-4 at 4-38.) The court also reviewed "01411-DAVIS & SON EXCAVATION" marked as "P01074" through "P01164," (R. 169-6 at 28-117), but because the entries in this document are identical to the entries included in "DAVIS AND SON TIME AND WORK RECORDS," and because the latter document covers a wider period of time and

9

includes numbered lines, the court relied on the pages marked "P00957" through "P01162" for determining reasonable hours expended.[4]

As a result of the court's review, the court strikes or reduces the following line items for the reason noted:

| Reason for Striking or Reducing Billing Items | Line Nos. |
|---|---|
| Unable to determine whether services rendered were necessary to prosecute the case. | 4, 16, 24, 31, 42, 44, 45, 54, 55, 59, 60, 64, 98, 100, 101, 105, 119, 120, 158, 165, 182, 183, 195, 197, 199, 207, 213, 227, 239, 240, 258, 262, 269, 277, 278, 279, 280, 281, 282, 283, 284, 300-305, 307, 308, 310, 311, 316, 323, 326, 327, 328, 330, 336, 341, 351, 356, 372, 381, 383, 395, 399, 401, 418-20, 421, 423, 424, 426, 428, 429, 433, 438, 441, 448, 455, 459, 462, 536, 544, 557, 569, 570, 575, 579, 589, 590, 597, 600, 621, and 622 |
| Time logged for services rendered excessive and reduced to 2.0 hours. | 320 and 492 |
| Time logged for services rendered excessive and reduced to 0.5 hour. | 26, 30, 36, 193, 547, 548, and 582 |

---

[4] Disappointingly, the Funds referred to both sets of time sheets as support for their fee petition without explaining the significance of each set. And although there are time entries in "01411-DAVIS & SON EXCAVATION" that do not appear in the document the court relied on—entries for July 1, 2020, August 18, 2020, July 21, 2021, September 7, 2021, September 20, 2021, (R. 169-6 at 44, 54, 76, 79, 82)—those entries are minimal, so the court disregards them for purposes of the Funds' petition. The Funds should have submitted only one comprehensive time sheet reflecting all hours being claimed.

| | |
|---|---|
| Time charged for the services rendered excessive and reduced to 0.1 hour. | 97, 107, 117, 118, 127, 131, 132, 140, 156, 218, 225, 314, 319, 321, 325, 333, 334, 339, 379, 391, 398, 406, 407, 408, 410, 412, 422, 435, 484-90, 495, 498, 512, 513, 514, 516, 524, and 550 |
| Time charged for the services rendered excessive and stricken. | 191, 192, 203, 205, 206, 208, 209, 210, 211, 229, 231, 232, 233, 234, 235, 236, 238, 266, 268, 274, 276, 285, 286, 287, 294, 295, and 296 |
| Services rendered unnecessary. | 76, 89, 214, 230, 237, 248, 297, 298, 309, 458, 463, 474, 475, 478, 491, 497, 504, 507, 508, 519, 523, 528, 534, 539, 540, 542, 545, 546, 553, 556, 559, 564, 566, 583, 587, 593, 595, 602, 604, 607, 609, 614, 620, and 623-28 |

Based on the court's review of the time sheets, the following hours and fees are approved:

| Attorney/Paralegal | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|
| Elizabeth A. LaRose | 712.95 | $200 | $142,590 |
| Dale D. Pierson | 4.25 | $200 | $850 |
| Brad H. Russell | 75 | $200 | $15,000 |
| Lisa M. Kramer | 11.1 | $100 | $1,110 |
| Dawn Weber | 81.25 | $100 | $$8,125 |
| | | Grand Total | $167,675 |

The court reduces this total by $1,125, a fee amount the court ordered Defendant to pay in connection with a motion to compel. As such, the total fee amount the Funds are entitled to recover from Defendant is $166,550. The court declines to exercise its discretion to further adjust this lodestar amount—up or down—because in this case the discretionary factors—including time and labor required, novelty and

11

difficulty of the questions presented, and skill required to perform the legal services properly—are "subsumed within the initial calculation" the court performed above. *See Anderson*, 578 F.3d at 544.

## C. Interest on Unpaid Contributions

Finally, the Funds seek 12% interest on the unpaid contributions. (R. 170, Funds' Mem. at 14-15.) Defendant does not dispute that the Funds are entitled to interest. (R. 177, Def.'s Resp. at 23.) Nor could it since ERISA states that "[i]n any action . . . in which a judgment in favor of the plan is awarded, the court shall award the plan . . . interest on the unpaid contributions." 29 U.S.C. § 1132(g)(2)(B).

Defendant nonetheless contests the amount of interest to be awarded. "[I]nterest on unpaid contributions [is] determined by using the rate under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Id.* § 1132(g) (citing 26 U.S.C. § 6621 (setting forth how to determine "rate of interest")). Here, the Funds assert that the trustees initially set the rate under the plan at 10% and then changed it to 12% in February 2017. (R. 169, Funds' Mot. Ex. 24-26; R. 170, Funds' Mem. at 14.) Defendant contests the authenticity of the resolution proffered by the Funds and suggests the interest rate must be set based on section 6621 of Title 26. (R. 177, Def.'s Resp. at 23); 26 U.S.C. § 6621. The court disagrees with Defendant and finds the evidence the Funds submitted sufficient to award 12% interest on the delinquent contributions, for a total of $3,413.50. (R. 170, Funds' Mem. at 15.)

## Conclusion

For the foregoing reasons, the court finds that Defendant owes the Funds $166,550 in reasonable attorneys' fees, $4,095.75 in costs, and $3,413.50 in interest as described herein.

**ENTER:**

**Young B. Kim
United States Magistrate Judge**